**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: |
| | ) | |
| | ) | VIOLATION: |
| v. | ) | 18 U.S.C. §§ 371, 1344, 1708 (Conspiracy |
| | ) | to Commit Bank Fraud and Theft of |
| | ) | Mail) |
| | ) | |
| | ) | |
| JA'VONTE A. BROWN, | ) | FORFEITURE: |
| | ) | 18 U.S.C. § 981(a)(1)(C), 982(a)(1), |
| | ) | U.S.C. § 2461(C) |
| Defendant. | ) | |

**INFORMATION**

The United States Attorney charges that,

**COUNT ONE**
**(Conspiracy)**

**Background**

1. Defendant JA'VONTE A. BROWN ("BROWN") was born on or about xx/xx/1993 in the District of Columbia.

2. At all times relevant to this matter, PNC Bank, N.A. ("PNC"), Wells Fargo Bank, N.A. ("Wells Fargo"), United Bank ("United Bank"), TD Bank, N.A., ("TD Bank"), Colombo Bank, ("Colombo Bank") and NASA Federal Credit Union ("NFCU"), were all federally-insured with either the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund, and were financial institutions as defined in Title 18, United States Code, Section 20, with branches in the District of Columbia, and elsewhere.

3. A private mailbox is an authorized depository for mail matter.

4. From on or about September 1, 2013, and continuing thereafter until on or about February 1, 2018, within the District of Columbia and elsewhere, defendant BROWN, together

with other co-conspirators, known and unknown to the United States, did knowingly and intentionally combine, conspire, confederate, and agree together to commit offenses against the United States, that is, violation of Title 18, United States Code, Section 1344 (Bank Fraud), and Title 18, United States Code, Section 1708 (theft of mail).

## Goal of the Conspiracy

5. It was a goal of the conspiracy for BROWN and his co-conspirators to obtain money from bank accounts under the control of financial institutions by cashing and causing to be cashed fraudulent checks that the conspirators created from real checks stolen from authorized mail depositories.

## The Object of the Conspiracy

6. Defendant BROWN and other conspirators known and unknown to the United States knowingly executed and attempted to execute a scheme and artifice to defraud a financial institution and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

7. Defendant BROWN and other conspirators known and unknown to the United States, stole, took, or abstracted, or by fraud or deception obtained, or attempted so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secreted, embezzled, or destroyed any such letter, postal card, package, bag, or mail, or any article or thing contained therein, in violation of Title

18, United States Code, Section 1708.

## The Conspiracy

8.      From on or about September 1, 2013, and continuing thereafter until on or about February 1, 2018, Defendant BROWN, his co-conspirators, and others participated in a theft and fraud scheme in which the conspirators stole mail, which had been left for collection in Virginia, and Maryland, in order to obtain outgoing checks.  The conspirators then created fraudulent checks from the original checks and caused them to be presented and cashed by others at financial institutions in the District of Columbia, Maryland, and Virginia.

9.      The individuals that cashed or attempted to cash the fraudulent checks received approximately $200 per check for a successful monetary transaction.  Defendant BROWN and his co-conspirators shared the remainder of the proceeds from the cashed fraudulent checks. Defendant BROWN received approximately $200,000 from participating in the conspiracy to steal mail matter, create fraudulent checks, and cash the fraudulent checks at financial institutions.

## The Manner and Means of the Conspiracy

10.     Among the manner and means by which defendant BROWN and his co-conspirators and others would and did carry out the objectives the conspiracy were the following:

   a.   They would and did devise and execute a scheme and artifice to defraud in which they operated a bank fraud scheme.  The scheme encompassed the theft of mail matter containing checks, which had been left for collection in authorized residential mailboxes for the United States Postal Service.

   b.   They would and did create fraudulent checks from real checks stolen from the mail, using the real checks' account holders' information, bank routing numbers, and account

numbers.

    c.    They would and did use computer software and printers to create the fraudulent checks.

    d.    They would and did make the checks payable to other individuals, real and made-up, and forged the signature of the original account holder's signatory onto the fraudulently created check.

    e.    They would and did obtain false identification documents, which were provided to other individuals in order for those individuals to pass the fraudulent checks at financial institutions.

    f.    They would and did use rental vehicles to recruit individuals to present and cash the fraudulent checks and to transport those individuals from the District of Columbia and elsewhere to financial institutions located in the District of Columbia, Maryland, and Virginia.

    g.    They would and did recruit individuals in the District of Columbia and Maryland to present and cash fraudulent checks at financial institutions in the District of Columbia, Virginia, and Maryland, using their own identification documents and using false identification documents.

    h.    They would and did pay numerous other individuals to present and cash fraudulent checks.

### Overt Acts in Furtherance of the Conspiracy

11.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts were, among others, committed in the District of Columbia and elsewhere:

    a.    Beginning on or about September 1, 2013, and continuing thereafter until

on or about February 1, 2018, in the District of Columbia and elsewhere, defendant BROWN recruited other individuals known and unknown to the United States, to participate in presenting and cashing fraudulent checks at financial institutions.

      b.      Defendant BROWN, his co-conspirators and others cashed checks at bank branches in the District of Columbia, Virginia, and Maryland, including, but not limited to branch locations of PNC Bank, TD Bank, United Bank, Colombo Bank, and Wells Fargo.

      c.      On or between September 2016, through on or about December 2017, while in the District of Columbia defendant BROWN recruited an individual, hereinafter referred to as Witness 1 ("W-1") to present and cash fraudulent checks for the conspirators.

      d.      On or about December 3, 2016, defendant BROWN gave W-1 cash to rent a vehicle, which he then used to drive W-1 and other individuals recruited by the conspirators to present and cash fraudulent checks at various financial institutions.

      e.      On or about August 26, 2016, an individual, who had been recruited by BROWN and his co-conspirators, hereinafter referred to as Witness 2 ("W-2") presented two fraudulent checks in the amount of $995.00 at PNC branches in the District of Columbia.

**(Conspiracy, in violation of 18 U.S.C. §§ 371, 1344, and 1708).**

## FORFEITURE ALLEGATION

1.      Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(A), and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendant in the amount of $200,000.

2.      If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(2)(A)Title 28, U.S.C. § 2461(c), and Title 21, United States Code, Section 853(p))**

    Respectfully submitted,

    JESSIE K. LIU
    UNITED STATES ATTORNEY
    D.C. Bar No. 472845

BY:    __/s/_____
    DIANE G. LUCAS, D.C. Bar. No. 443610
    Assistant United States Attorney
    Fraud and Public Corruption Section
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 252-7724 (Lucas)
    Diane.Lucas@usdoj.gov